## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**CARY DELAUNE**                                    **CIVIL ACTION NO.**

**VERSUS**

**KINDER MORGAN BULK**                    **23-360-JWD-EWD**
**TERMINALS, LLC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 1, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

CARY DELAUNE                                    CIVIL ACTION NO.

**VERSUS**

KINDER MORGAN BULK                              23-360-JWD-EWD
TERMINALS, LLC, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand,[1] filed by Plaintiff Cary Delaune, which is

opposed by Defendants Kinder Morgan Bulk Terminal, LLC, Michael A. Sassich, Matthew J.

Notarangelo and William M. Weber.[2]  Because the three non-diverse, individual defendants have

been improperly joined, it is recommended[3] that Plaintiff's claims against Sassich, Notarangelo,

and Weber be dismissed without prejudice, and that the Motion be denied.

I.    BACKGROUND

Cary Delaune ("Plaintiff") seeks damages in this case arising out of his alleged exposure

to Methylene Diphenyl Diisocyanate ("MDI") while working at the Gonzales, Louisiana storage

facility/distribution center operated by Defendant Kinder Morgan Bulk Terminals, LLC

("KMBT").[4]  On April 17, 2023, Plaintiff filed his Petition for Damages in state court against

KMBT and Rubicon, LLC, the alleged producer of the MDI; as well as Sassich, KMBT Terminal

Manager; Notarangelo, former KMBT Plant Superintendent, and Weber, KMBT Plant

Superintendent (the "Supervisory Defendants").[5] The Petition alleges that Plaintiff was diagnosed

---

[1] R. Doc. 38.  Plaintiff also filed a Reply Memorandum. R. Doc. 46.
[2] R. Doc. 41.  Sassich's name is sometimes spelled "Sasich" in the motion papers. *See* R. Doc. 43-5, p. 1.  The former spelling is adopted in this Report as that is the spelling in the Petition. R. Doc. 1-1.
[3] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.").
[4] R. Doc. 1-1, ¶¶ 3, 8, 11.
[5] R. Doc. 1-1, ¶¶ 2, 9, 10, 11.

with hypersensitivity pneumonitis on April 19, 2022 as a direct result of his exposure to MDI at the KMBT facility.[6]  The Petition further alleges that all defendants are jointly and severally liable for Plaintiff's injuries, and asserts intentional tort and negligence claims, as well as claims under Louisiana's Products Liability Act, La. R.S. 9:2800.51, *et seq*.[7]

On May 10, 2023, KMBT removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332.[8]  Supplemental briefing ordered by the Court has established that the amount in controversy is likely met.[9]  The Notice of Removal alleges that Plaintiff is a Louisiana citizen, who is diverse from KMBT (a citizen of Delaware and Texas), and Rubicon (a citizen of Delaware, Pennsylvania, and Texas), but who is not diverse from the Supervisory Defendants, Louisiana citizens that KMBT contends are improperly joined.[10]  In the Motion, Plaintiff challenges diversity jurisdiction, seeking remand on the grounds that KMBT has not established that KMBT and Rubicon are diverse from Plaintiff, and that the Supervisory Defendants have been improperly joined.[11]  However, while it is undisputed that Plaintiff and the Supervisory Defendants are employees of KMBT, the parties' briefing failed to fully address the applicability of the

---

[6] R. Doc. 1-1, ¶¶ 3, 12, 67, prayer for relief.

[7] R. Doc. 1-1, pp. 5-14.

[8] R. Doc. 1, intro. para. and ¶ 17.

[9] R. Doc. 11.  In response to the Court's Order, KMBT produced evidence establishing that the amount in controversy is likely met based on Plaintiff's alleged injuries and treatment, including the need for oxygen 16 hours per day, past lost wages of at least $88,000, and lost future wages, as Plaintiff testified he is unable to return to his former employment.  R. Docs. 35-37.

[10] R. Doc. 1-1, ¶ 1, ¶ 2(3)-(5); R. Doc. 1, ¶¶ 18, 21 (alleging that KMBT is a limited liability company with one member, Kinder Morgan, Inc., a Delaware corporation with its principal place of business in Texas, based on records of the Louisiana and Texas Secretary of State offices (R. Doc. 1-3); R. Doc. 1, ¶ 23 (alleging Rubicon is a limited liability company with two members, (1) Lanxess Corporation, a Delawre corporation with its principal place of business in Pennsylvania and (2) Huntsman International LLC, whose sole member is Huntsman Corporation, a Delaware corporation with its principal place of business in Texas); and R. Doc. 1, ¶¶ 33-41 (alleging that the Supervisory Defendants have been improperly joined).

[11] R. Doc. 38-1, pp. 11-13.

exclusivity provisions of the Louisiana Worker's Compensation Act ("LWCA"), La. R.S. § 23:1032.[12] Supplemental briefing ordered by the Court addressed this issue.[13]

## II.    LAW AND ANALYSIS

### A.  Legal Standards for Remand and Improper Joinder

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[14] When, as here, jurisdiction is alleged based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[15] The citizenship of a limited liability company is determined by the citizenship of all its members.[16] To adequately allege citizenship of a limited liability company, each member of a must be specifically identified and its citizenship alleged.[17] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[18] The removing party has the burden of proving federal diversity jurisdiction.[19] Remand is proper if at any time the court lacks subject matter jurisdiction.[20] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[21]

---

[12] R. Doc. 1, ¶¶ 2-10; R. Doc. 38-1, pp. 6, 8-9, 11-12.
[13] R. Doc. 49, citing *Garcia v. Westlake Chem. Corp*., No. 18-764, 2019 WL 4252801, at *7 (M.D. La. Aug. 22, 2019), report and recommendation adopted, No. 18-764, 2019 WL 4247826 (M.D. La. Sept. 6, 2019) (recommending denial of remand dismissal of claims against non-diverse defendant employer immune from suit pursuant to the LWCA due to the improper joinder); and R. Docs. 50-51 (parties' supplemental briefs).
[14] 28 U.S.C. § 1441(a).
[15] 28 U.S.C. § 1332(a)(1).
[16] *Harvey v. Grey Wolf Drilling Co*., 542 F.3d 1077, 1080 (5th Cir. 2008).
[17] *Nunez v. ACE Am. Ins. Co.,* No. 17-1593, 2017 WL 6997341, at *4 (M.D. La. Dec. 28, 2017), report and recommendation adopted, No. 17-1593, 2018 WL 493398 (M.D. La. Jan. 16, 2018).
[18] *Hinkle v. USAA Gen. Indem. Co.*, No. 17-156, 2017 WL 4411052, at *3 (M.D. La. Sept. 11, 2017), report and recommendation adopted*,* No. 17-156, 2017 WL 4401631 (M.D. La. Sept. 29, 2017), citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).
[19] *Garcia v. Koch Oil Co. of Texas Inc*., 351 F.3d 636, 638 (5th Cir. 2003).
[20] *See* 28 U.S.C. § 1447(c).
[21] *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281-82 (5th Cir. 2007).

The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity.[22] If a non-diverse defendant is improperly joined, a district court can disregard the citizenship of that defendant for the purposes of evaluating its jurisdiction.[23] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[24] In *Smallwood*, the seminal decision of the United States Court of Appeals for the Fifth Circuit on this issue, the Court "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[25] Here, there has been no allegation of fraud in the pleading of jurisdictional facts. Further, KMBT specifically argues improper joinder under the second method, *i.e.*, that Plaintiff is unable to establish a cause of action against the Supervisory Defendants.[26] Therefore, the only question before the Court is whether KMBT has shown "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[27] A court may resolve the issue of whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. "The court may conduct a Rule 12(b)(6) analysis, looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[28] "That said, there are cases,

---

[22] *McDonal v. Abbott Laboratories,* 408 F.3d 177, 183 (5th Cir. 2005).

[23] *Williams v. Homeland Ins. Co. of New York,* 18 F.4th 806, 812 (5th Cir. 2021), citing *Flagg v. Stryker Corp.,* 819 F.3d 132, 137 (5th Cir. 2016).

[24] *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*).

[25] *Smallwood,* 385 F.3d at 573, quoting *Travis v. Irby,* 326 F.3d 644, 646-47 (5th Cir. 2003).

[26] R. Doc. 1, ¶¶ 33, 35, 37 and *see* R. Doc. 38-1, p. 11.

[27] *Smallwood,* 385 F.3d at 573. *See also Williams,* 18 F.4th at 812 ("We typically evaluate this question by evaluating whether the plaintiff had any possibility of recovery against the non-diverse defendant in state court at the time of removal.") (citations omitted).

[28] *Smallwood,* 385 F.3d at 573. As a Fed. R. Civ. P. 12(b)(6) inquiry is conducted on the face of the Complaint, the lack of discovery prior to removal is not dispositive. R. Doc. 38, p. 1; R. Doc. 50, p. 7 (Plaintiff's argument that KMBT removed this case before any discovery could occur in state court).

hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[29] "[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court."[30] In contrast, if the plaintiff cannot survive the Rule 12(b)(6) challenge, dismissal of the improperly joined defendant, without prejudice, is warranted.[31]

### B. KMBT Has Established That the Properly Joined Parties Are Completely Diverse

KMBT has adequately established that Defendant Rubicon, LLC is a citizen of Delaware, Pennsylvania and Texas, because, according to the declaration of Rubicon's General Manager, Rubicon's members are Lanxess Corporation, a Delaware corporation with its principal place of business located in the Pennsylvania, and Huntsman International LLC, whose sole member is Huntsman Corporation, a Delaware corporation with its principal place of business in Texas.[32]

KMBT, a limited liability company, has also adequately established its own citizenship, based on the citizenship of its sole member, Kinder Morgan, Inc., a Delaware corporation with its principal place of business in Texas.[33] Plaintiff takes issue with KMBT's reliance on a Louisiana Secretary of State ("SOS") record to establish that KMBT's only member is Kinder Morgan, Inc.[34] However, the SOS record does appear to indicate that KMBT's only member is Kinder Morgan,

---

[29] *Smallwood,* 385 F.3d at 573.

[30] *Williams,* 18 F.4th at 815 (citations omitted).

[31] *See Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 16-5, 2016 WL 5942327, at *3 (W.D. Tex. Oct. 12, 2016), citing *Int'l Energy Ventures Mgt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) ("When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice.").

[32] *See* R. Doc. 41, p. 4 and R. Doc. 41-4, the Declaration of Mark K. Dearman, General Manager of Rubicon, made under penalty of perjury. In his reply memorandum, Plaintiff does not challenge the allegations about Rubicon's citizenship. R. Doc. 46.

[33] R. Doc. 41, p. 3 and R. Doc. 41-1.

[34] R. Doc. 46, p. 4

Inc., as it states Kinder Morgan, Inc. is an officer whose title is "Member," and also states "Additional Officers: No."[35] Moreover, at least one other federal proceeding has acknowledged evidence showing that Kinder Morgan, Inc. is the sole member of KMBT.[36]  As to Kinder Morgan, Inc.'s citizenship, KMBT has provided a Delaware SOS record that reflects that Kinder Morgan Inc. was incorporated in Delaware, and a Texas SOS record that reflects that Kinder Morgan, Inc.'s principal place of business is in Texas.[37] These citizenship allegations have also been noted in other federal proceedings.[38] The evidence and authority provided adequately establish that KMBT and Rubicon are of diverse citizenship from Plaintiff, a citizen of Louisiana.[39]

### C.  The Supervisory Defendants Were Improperly Joined

#### 1.  Plaintiff's generalized allegations in the Petition do not show that his injuries were the result of an intentional act by any of the Supervisory Defendants such that his claims are precluded under the LWCA.

KMBT argues that the Supervisory Defendants are immune from Plaintiff's tort suit pursuant to the LWCA.[40]  To establish improper joinder, KMBT must prove there is no possibility Plaintiff can recover against the Supervisory Defendants in this tort action under applicable state

---

[35] R. Doc. 41-1.  While Plaintiff argues that the SOS records are unauthenticated and/or should not be considered because they were not previously filed with the Notice of Removal (R. Doc. 46, pp. 1, 4), judicial notice can be taken of SOS records filed post-removal to determine citizenship.  *See Jackson v. Country Club of Louisiana, Inc.,* No. 20-452, 2021 WL 261538, at *4 (M.D. La. Jan. 26, 2021) ("Indeed, the law is well-settled that courts must take judicial notice of Louisiana Secretary of State records (and other matters of public record) in determining identity, citizenship, and business status of business entities involved in litigation.") (citations omitted). Additionally, under 28 U.S.C. § 1653, a defendant is generally allowed to cure defective allegations of citizenship, even after expiration of the thirty-day period in § 1446(b). *See Crow v. Melton,* No. 17-3103, 2018 WL 10419358, at *8 (N.D. Tex. Feb. 20, 2018), report and recommendation adopted, No. 17-3103, 2018 WL 10419359 (N.D. Tex. Mar. 23, 2018).

[36] *Bulk Trading S.A. v. Mid-Ship Grp. LLC,* No. 18-4650, 2020 WL 13659080, at *3 (E.D.N.Y. Feb. 4, 2020) (noting that the plaintiff submitted "a copy of Kinder Morgan Bulk Terminals LLC's 2018 Annual Report listing Kinder Morgan, Inc. as its member.").

[37] R. Docs. 41-2 and 41-3.

[38] *Bulk Trading S.A.,* 2020 WL 13659080 at *3 (noting the filing of "a copy of Kinder Morgan, Inc.'s Franchise Account Status as of March 5, 2019 with the Texas Comptroller of Public Accounts evidencing that it is incorporated in Delaware with a principal place of business in Texas.") and *see Koster v. Kinder Morgan, Inc.,* No. 20-50031, 2020 WL 3303002, at *1 (N.D. Ill. June 17, 2020) (in a personal injury action against Kinder Morgan, Inc., noting "Plaintiff, Michael Koster, a citizen of Illinois, brings this action against defendant, Kinder Morgan, Inc., a Delaware corporation with its principal place of business in Texas….").

[39]  Plaintiff has not come forward with any evidence to refute KMBT's citizenship allegations.

[40] R. Doc. 51; and *see* La. R.S. § 23:1032, *et seq.*

law.[41]  Louisiana Revised Statute § 23:1032 provides that workers' compensation benefits are the exclusive remedy of an employee against an employer and/or co-workers for injuries arising out of and in the course and scope of employment.  This immunity from tort actions, however, does not apply when the employee's injuries are the result of an intentional act of the employer or co-workers.[42]

Plaintiff alleges he was working in the course and scope of his employment with KMBT, as were the Supervisory Defendants, when the alleged chemical exposure that caused his injuries occurred.[43]   However, Plaintiff contends that the LWCA does not bar this suit against the Supervisory Defendants because they intentionally caused his injuries.[44]   Therefore, this Court must determine whether there is any possibility that Plaintiff can recover from the Supervisory Defendants for an intentional tort.[45]

The Louisiana Supreme Court defines an intentional tort as occurring when "the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[46] "Under the substantially certain

---

[41] "When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims." *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, No. 10-684, 2013 WL 1296678, at *2 (M.D. La. March 28, 2013), *subsequent history omitted*, citing *LeMeilleur v. Monumental Life Ins. Co.*, 419 Fed.Appx. 451, 453 (5th Cir. 2011) and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[42] La. R.S. § 23:1032(B).  *See Charkhian v. National Environmental Testing, Inc*., No. 95-177, 907 F.Supp. 961 (M.D. La. July 24, 1995) ("Under the Louisiana Workers' Compensation Act ("Act"), an employee's exclusive remedy against his employer **and any co-workers** for personal injuries sustained during the course and scope of employment is ordinarily limited to recovering workers' compensation benefits rather than tort damages.")(emphasis added; citations omitted).

[43] R. Doc. 1-1, p. 2, ¶¶ 2-3, and p. 11, ¶ 56; R. Doc. 38-1, pp. 8-9.

[44] R. Doc. 50, pp. 4-7.

[45] Arguments about the propriety of Plaintiff's intentional tort claims against KMBT, which is diverse, as well as KMBT's ability to assert LWCA defenses, are not reached because they are unnecessary for resolution of the current Motion. R. Doc. 50, pp. 1-4.

[46] *Frank v. Shell Oil Co.,* No. 11-871, 828 F.Supp.2d 835, 849 (E.D. La. Oct. 31, 2011), on reconsideration in part, No. 11-871, 2012 WL 1230736 (E.D. La. Apr. 12, 2012), citing *Bazley v. Tortorich,* 397 So.2d 475, 481 (La. 1981). The parties agree this is the applicable legal standard. *See* R. Doc. 50, pp. 6-7 and R. Doc. 51, pp. 4-5.

exception, the jurisprudence requires more than a reasonable probability that an injury will occur and defines 'certain' to mean 'inevitable' or 'incapable of failing.'"[47] Mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing."[48] "'Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.'"[49]

The Petition generally alleges that the Supervisory Defendants committed intentional torts against Plaintiff when they intentionally failed to disclose the dangers and risks associated with MDI exposure to him, which caused Plaintiff to contract MDI-related hypersensitivity pneumonitis. These allegations are enumerated in seven generally-described "fail[ures]," and two induc[ements]," including failure to provide necessary protection and safety equipment to Plaintiff.[50]  The Petition also generally alleges the Supervisory Defendants had personal knowledge of MDI-exposure risks and breached ten generally-alleged duties/responsibilities delegated to them by KMBT to provide Plaintiff with proper supervision, safety instructions,

---

[47] *Frank*, 828 F.Supp.2d at 849 citing *Zimko v. Am. Cyanamid*, 2003-0658 (La.App. 4 Cir. 6/8/05); 905 So.2d 465, 476, *writ denied*, 2005-2102 (La. 3/17/06); 925 So.2d 538.

[48] *Frank*, 828 F.Supp.2d at 849, citing *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So.2d 208, 213.

[49] *Id.*, citing *Reeves*, 731 So.2d at 210 (quoting 2A Larson, *Workmen's Compensation Law* § 68.13 (1989)).

[50] *See* R. Doc. 1-1, pp. 10-11, ¶ 55 (a)-(i), alleging "the [Supervisory Defendants] committed the following intentional acts which caused Mr. Nelson to suffer from MDI-related diseases …" by failing to do the following: provide necessary protection to Plaintiff; provide safety equipment as required by safety statutes; provide clean, respirable air and proper ventilation; provide proper medical monitoring; monitor the extent and output of MDI spillage and exposures in the workplace; warn Plaintiff and other workers of the dangers associated with MDI, TDI, and other diisocyanates; and keep MDI output into the workplace at safe levels, as well as alleging these defendants induced Plaintiff to work in a polluted workplace and areas laden with MDI.  The reference to "Mr. Nelson" appears to be a typographical error.

warnings and a safe workplace.[51]   As a result of their breaches, Plaintiff alleges that the Supervisory Defendants were "substantially certain" that Plaintiff would suffer MDI related hypersensitivity pneumonitis.[52] The Petition further alleges that the Supervisory Defendants committed a civil battery against Plaintiff because they "intended to release and expose" Plaintiff to MDI, when they "knew to a substantial certainty that inhalation of MDI would cause serious health risks…."[53]

In his supplemental brief, Plaintiff alleges that these specific factual allegations of intentional acts by the Supervisory Defendants show their knowledge and intent,[54] which distinguishes this case from *Garcia*, in which the plaintiff failed to plead specific facts and instead only alleged negligence and made generalized allegations about intentional torts.[55]  Plaintiff argues that, if the Court pierces the pleadings, however, he has presented evidence in support of his allegations, including his sworn deposition testimony given in his worker's compensation case against KMBT, and his newly-proffered affidavit, which alleges that the Supervisory Defendants were aware of the dangers of MDI and prior employee reactions to MDI but failed to act.[56]  Plaintiff

---

[51] *See* R. Doc. 1-1, p. 11, ¶ 56, alleging the Supervisory Defendants were delegated responsibilities and/or undertook to perform the following duties:  inspecting, approving, and supervising Plaintiff and his co-employees' work; seeing that proper safety rules were adopted, promulgated, and enforced concerning the use of respiratory protection devices; seeing that Plaintiff and his co-employees performed the duties pertaining to their work in a  proper, safe and workmanlike manner; seeing that Plaintiff and his co-employees used safe and sound principals [sic] and practices in their work; making health and hygiene decisions on any and all questions regarding the use of respiratory protection devices; keeping abreast of state of the art knowledge as it pertains to the dangers of MDI inhalation; providing adequate warnings, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order to prevent Plaintiff from being harmed by  exposure to MDI in the environment which Plaintiff was required to work; making certain that employees, including Plaintiff, were provided a safe working environment free from MDI inhalation; complying with applicable State and Federal regulations regulating workplace exposure to MDI; and providing Plaintiff with a safe place to work.
[52] *See* R. Doc. 1-1, p. 12, ¶¶ 57-61 (alleging the Supervisory Defendants' failure to exercise reasonable care and breach of personal duties in allowing Plaintiff to work around MDI despite their actual and personal knowledge of the risks associated with working around MDI).
[53] R. Doc. 1-1, pp. 12-13, ¶¶ 62-67.
[54] Nevertheless, Plaintiff contends that he is not required to plead the intent element of an intentional tort. R. Doc. 50, pp. 4, 7 citing *Mayer v. Valentine Sugars, Inc.*, 444 So.2d 618, 620 (La. 1984).
[55] R. Doc. 50, pp. 4-5 citing 2019 WL 4252801.
[56] R. Doc. 50, p. 5 and *see* R. Doc. 39-3 (Plaintiff's affidavit) and R. Doc. 39-4 (transcript of Plaintiff's deposition).

relies on several state court decisions which he says permitted intentional tort claims against employers and executive officers where the employees showed their employers' "knowledge of the dangerous condition" but "knowingly required" the plaintiffs to perform tasks that injured them.[57]

In response, KMBT argues that the intentional tort exception to the LWCA is given a narrow interpretation, and Plaintiff has not borne his burden to provide factual allegations that show that his injuries resulted from the Supervisory Defendants' intentional acts.[58]  Rather, Plaintiff's allegations in this case are similar to the conclusory allegations that *Garcia* found inadequate to establish an intentional tort against the employer, and the same result should be reached, *i.e.*, the Supervisory Defendants should be dismissed as improperly joined.[59]  Although KMBT previously provided evidence to support its contention that Plaintiff cannot state a claim against the Supervisory Defendants, KMBT also argues in supplemental briefing that it is not necessary for the Court to consider "'summary-judgment type' evidence" because Plaintiff's allegations against the Supervisory Defendants cannot survive a Fed. R. Civ. P. 12(b)(6) analysis.[60]

Plaintiff bears the burden of demonstrating that a work-related injury resulted from an intentional act.[61]  In *Guillory v. Domtar Industries Inc.,*[62] the Fifth Circuit noted that "[c]ourts narrowly interpret the intentional act loophole to the workers' compensation system."[63]  In *Guillory,* an employee was injured after being struck on the head by a fork that fell from a forklift.

---

[57] R. Doc. 50, pp. 6-7, citing *Clark v. Division Seven, Inc*., 99-3079 (La. App. 4 Cir. 12/20/00); 776 So.2d 1262, *Trahan v. Trans-Louisiana*, 618 So.2d 30, 32 (La.App. 3 Cir. 5/5/93), *Abney v. Exxon Corp*., 98-0911 (La.App. 1 Cir. 9/24/99); 755 So.2d 283, and *Major v. Fireman's Fund Ins. Co.*, 506 So.2d 583, 584 (La.App. 4 Cir. 4/9/87).
[58] R. Doc. 51, p. 1.
[59] R. Doc. 51, pp. 4-7, citing *Garcia*, 2019 WL 4252801.
[60] R. Doc. 51, p. 7, citing R. Docs. 43-5 through 43-7 (the declarations of Sassich, Weber, and Notarangelo).
[61] *Frank,* 828 F.Supp.2d at 849*,* citing Mayer*,* 444 So.2d 618.
[62] 95 F.3d 1320.
[63] 95 F.3d at 1328 (citations omitted).  *See also Zimko v. Am. Cyanamid,* 905 So.2d at 475 citing *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99); 731 So.2d 208, 211.

When ruling on a motion for summary judgment, the Court found that the employer did not intend to injure the employee and, therefore, the exclusivity provisions of the LWCA prevented the employee from recovering against the employer in tort. The *Guillory* court concluded that, even if the falling fork created a "'high probability' of injury, this would not establish 'intent' sufficient to bypass the workers' compensation system."[64]  The *Guillory* court further noted that, even if it could be established that the employers' acts or omission constituted "gross negligence," "intent" still would be lacking.[65]  Notably, the Fifth Circuit found that an employer's prior knowledge that forks could fall off the forklifts, including prior knowledge that one of the forks usually fell off the forklift used by the plaintiff, was not enough to establish intent on the part of the employer.[66]

Plaintiff's allegations fail to state a claim against the Supervisory Defendants.  As noted, the Petition's assertions of nine general failures and inducements of the Supervisory Defendants, *e.g.*, their failure to provide safety equipment and clean air, and their inducement of Plaintiff to work in an area with MDI, are not supported by any specific facts sufficient to show that the Supervisory Defendants acted intentionally to harm Plaintiff.[67]  Plaintiff's allegations that the Supervisory Defendants breached ten generally described duties delegated to them by KMBT are also not supported by specific facts to show how the Supervisory Defendants breached any of those duties.

Plaintiff's allegations are like the ones rejected by this Court in other hazardous exposure cases upholding LWCA immunity.  For example, in *Bonner v. Georgia-Pacific, LLC*, the plaintiffs alleged that they were exposed to hazardous dust and fumes associated with lead based paint that covered the structure on which he was working and, like Plaintiff here, named their employer as a

---

[64] 95 F.3d at 1328 (citations omitted).
[65] *Id.* (citations omitted).
[66] 95 F.3d at 1327.
[67] R. Doc. 1-1, pp. 10-1, ¶ 55.

defendant, based on the employer's alleged intentional tort.[68]  To establish an intentional tort, the *Bonner* plaintiffs alleged in their petition that the employer had conducted a professional lead test that was positive but "intentionally withheld the known positive result from the professional lead testing from Complainants for an unknown period of time with full knowledge that Complainants continued to perform the work while exposed to toxic levels of lead without any respiratory protection."[69]  The plaintiffs also alleged that their employer and the plant owner "through their agents and/or employees, inflicted serious bodily harm upon Complainants and knew or should have known that serious bodily injury was substantially certain to follow from the circumstances under which Complainants were required to perform the work…."[70]  This Court granted the employer's motion to dismiss, holding:

> It is clear from the face of Plaintiffs' Complaint that their allegations amount to a failure to provide a safe work place and failure to provide protective equipment, despite the use of certain legal phrases in an attempt to transform the claims to intentional torts. As discussed above, a plaintiff cannot merely include the word "intentional" or the phrase "substantially certain" in a complaint to avoid application of the exclusive remedy provision of Louisiana's workers' compensation law.[71]

This Court further found that the employer's alleged withholding of the positive test result, which was the only intentional act alleged in the Petition, was a conclusory allegation unsupported by any factual basis, as the plaintiffs failed to identify how they received that information or how it was reliable.[72]

---

[68] *Bonner v. Georgia-Pac., LLC,* No. 12-456, 2013 WL 2470466 (M.D. La. June 7, 2013).
[69] *Bonner,* 2013 WL 2470466, at *3.
[70] *Id.*
[71] *Id.* (citation omitted).
[72] *Id.*, at *4.

The same reasoning applies to Plaintiff's claims here. The Petition fails to allege specific facts to support his intentional tort claim against the Supervisory Defendants.[73] *Bonner* refutes Plaintiff's argument that allegations that the Supervisory Defendants acted "intentionally," with "actual knowledge," and breached "personal du[ties]" such that they "knew to a substantial certainty" that Plaintiff would be injured, are sufficient to state an intentional tort.[74] There are no supporting *facts* to show that the Supervisory Defendants knowingly subjected Plaintiff to the risk of MDI exposure or that the Supervisory Defendants were substantially certain that harm would come to Plaintiff because of his workplace.

*See also Frank,*[75] relied on in *Bonner*, in which the plaintiff sued Shell, her husband's employer, after the husband contracted leukemia due to alleged exposure to benzene in the workplace. This Court granted the employer's motion to dismiss, finding the following allegations insufficient to state an intentional tort: that "Shell was 'well aware of the serous [sic] health hazards associated with the use of benzene,' that Shell 'should have provided adequate and safely designed protective equipment, and conducted medical examinations as appropriate,' … that the actions of

---

[73] In this case, Plaintiff's affidavit in support of the Motion alleges, "Prior to, and during my employment with Kinder Morgan, other employees had to be moved or relocated from the Geismar logistics terminal following allergic reactions to chemicals, including MDI," which Plaintiff alleges distinguishes his allegations from those in *Garcia.. See* R. Doc. 39-3 and R. Doc. 50, pp. 4-6. Even if this conclusory allegation were considered (and it is not, for the reasons explained *below*), it fails. *See Bonner* at *id.* (holding that the plaintiffs failed to show how they received their information and its reliability, and even if the plaintiffs could prove that the employer's withholding of the positive result was true, "Plaintiffs fail to plead supporting factual allegations to show that [his employer] was substantially certain that Plaintiffs' alleged damages would follow from the alleged conduct."). Likewise, here, Plaintiff has not shown how he is aware of his co-workers' circumstances or the reliability of his statements. Moreover, Plaintiff has also failed to provide supporting factual allegations, which show that the Supervisory Defendants had knowledge of relocated co-workers and the reasons for their relocations, and has failed to allege that the Supervisory Defendants intended to harm, or were substantially certain harm would come to, those co-workers.

[74] *See Bonner*, 2013 WL 2470466 at *3. *See also Williams v. Syngenta Corp.,* No. 15-644, 2016 WL 807762, at *8 (M.D. La. Feb. 3, 2016), report and recommendation adopted, No. 15-644, 2016 WL 888865 (M.D. La. Mar. 1, 2016) and *McLin*, 102 F.Supp.2d at 344-45. Plaintiff's attempt to distinguish the "intentional" allegations in his Petition from the allegations in *Garcia* fails because, as these cases hold, recitation of the words "intentional" and "substantially certain" are insufficient. Plaintiff points out that the removing defendants who successfully obtained dismissal of Turner Industries LLC, the alleged non-diverse employer/defendant in *Garcia,* as improperly joined, subsequently attempted to assert third party claims against Turner in the same proceeding. R. Doc. 50, p. 7. However, the removing defendants' motion for leave to assert the third party demand against Turner was denied. R. Doc. 83.

[75] 828 F.Supp.2d 835.

Shell 'were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in damage or injury to the Plaintiffs,' … that Shell 'consciously and/or deliberately engaged in oppression, fraud, wantonness and/or malice with regard to [the husband] and other employees' such that Shell 'should be held liable for the intentional inflictions of physical injury upon its employee,' … that Shell had intentionally exposed [the husband] to benzene and knew with substantial certainty that the work conditions imposed would result in exposure to benzene which would naturally result in the disease from which he suffered.".[76]

In *Williams v. Syngenta Corporation*, the plaintiff sued his employer, PCS, and others alleging that chemical exposure in the workplace caused him to contract Non-Hodgkin's Lymphoma, despite (and/or because of) his use of a protective suit, which the plaintiff alleged was inadequate.[77]  In support of his claim that the employer committed an intentional tort, the plaintiff alleged: "PCS knew or should known [sic] that the lack of the proper safety equipment was substantially certain to lead to the injury and death of [Plaintiff]; however, it failed to offer the proper personal safety equipment necessary to provide for the personal well being and safety of its employees such as [Plaintiff]," and "PCS committed acts (including providing a suit that offered no chemical protection) which can only be described as intentional and are actionable as an exception to the exclusivity rule found in the workers compensation scheme. Defendant PCS knew

---

[76] *Bonner*, 2013 WL 2470466, at *3, citing *Frank*, 828 F.Supp.2d at 849-50.  *See also Pate v. Adell Compounding, Inc.,* No. 97-132, 970 F.Supp. 542, 547 (M.D. La. July 14, 1997) (the plaintiff employee was injured when his sleeve got caught in a roller of a strand puller and sued his employer, alleging his employer "intentionally caused the injuries" and "is held to have known of the dangerous propensities and defective design of the strand puller, and knew that an accident resulting in the nature of the [plaintiff's] injuries was substantially certain to occur;" and the employer's "total disregard for [plaintiff's] safety and its conscious decision to not provide any safety guards on the strand puller constitute an intentional act under the provisions under La. R.S. 23:1032(B)." This Court found that the plaintiffs "have failed to point to any specific facts or offer any evidence which even hints of any specific facts which support their intentional tort claim against Adell," and further held: "Viewing the facts most favorable to the plaintiffs, this Court finds an employer's knowledge of a work place risk to an employee does not constitute 'intent' under the intentional act exclusion. Therefore, this Court finds there is no reasonable basis for predicting that a Louisiana state court might impose liability on Adell on the plaintiffs' intentional tort theory.").  *Id.* at 547.
[77] *Williams*, 2016 WL 807762, at *1.

that by requiring [Plaintiff] to work with carcinogenic materials with a suit that it knew provided no chemical protection such was substantially certain to lead to the injury and illness of [Plaintiff]."[78]  Citing *Bonner*, this Court again held: "[T]he Petition in this action fails to provide any specific factual allegations supporting a finding that Plaintiff has a possibility of recovery against PCS based on the intentional act exception," and "[h]ere, the Petition does not allege any facts in support of the conclusory allegations that PCS knew the 'hazardous materials' at issue were carcinogenic; that the Tyvek brand protective suits supplied did not provide adequate chemical protection with regard to those hazardous materials; or that use of the Tyvek brand protective suit in this specific work environment was substantially certain to lead to Plaintiff's injuries, particularly the development of Non–Hodgkin's Lymphoma. The Petition does not allege whether PCS was aware of the materials comprising the Tyvek brand protective suits or that the Plaintiff or any other employees alerted PCS of the alleged lack of adequate chemical protection provided by the suit."[79]

Significantly, like the *Williams* plaintiff, Plaintiff's Petition in this case does not allege that Plaintiff alerted KMBT as to any injuries resulting from exposure to MDI in the workplace during

---

[78] *Williams,* 2016 WL 807762, at *6-7.  The *Williams* petition also alleged: "PCS committed acts of omission and commission, which collectively and severally, were either intentional or constituted negligent and recklessness.... This negligence and intentional conduct includes, but is not limited to the following: (a.) Failed to identify and evaluate the hazards of the personal safety equipment offered to its employees; (b.) Failed to ensure the use of proper equipment (including but not limited to protective suits) needed by its employees performing work in a hazard scenario; (c.) Failed to obtain and provide proper training to its employees; and (d.) Requiring employees to work in a dangerous environment without adequate personal protective equipment," which was also found insufficient to allege an intentional tort. *Id.*, at *6.

[79] *Id.*, at *8-9, citing *Bonner*, 2013 WL 2470466 at *3-4.  *See also Williams,* 2016 WL 807762, *5 (citing *Rosales v. Bunzzy's Enter. Realty LLC,* No. 06–11149, 2008 WL 754856, at *2 (E.D. La. Mar. 19, 2008) (identifying certain situations that Louisiana courts have determined "almost universally do not form the basis of an intentional tort: failure to provide a safe place to work, poorly designed machinery, failure to follow OSHA safety provisions, failure to provide requested safety equipment, and failure to correct unsafe working conditions.") (citing *Zimko,* 905 So.2d at 477 (La.App. 4 Cir. 2005)). *See also Hardy v. Ducote* 246 F.Supp.2d 509, 514 (W.D. La. 2003) ("Louisiana courts have held that the following acts do not fall within the intentional act exception: (1) an employer's knowledge as to allegedly poor condition of tires where injury was possible or even likely to occur, *Verret v. State Farm Mut. Auto. Ins. Co.,* 759 So.2d 115, 124 (La.App. 3 Cir. 2000), *writ denied,* 760 So.2d 1159 (La. 2000); (2) knowledge by an employer that it utilizes hazardous chemicals and that there is a potential in the work place for accidental discharge of those products, *Bourque v. Nan Ya Plastics Corp.,* 906 F.Supp. 348, 352 (M.D. La. 1995)....").

his employment or that KMBT required Plaintiff to continue working despite those injuries,[80] which distinguishes Plaintiff's circumstances from the workers in the cases upon which Plaintiff relies.[81]   As explained in *Frank*, distinguishing several cases upon which Plaintiff relies, "[t]he other cases cited by [the p]laintiff similarly involve allegations of employees sustaining open or apparent injury or illness while working, which the employer failed to remedy or ordered the employee to continue working despite these effects. *See e.g. Belgard v. Am. Freightways, Inc*., 99–1067 (La.App. 3 Cir. 12/29/99), 755 So.2d 982[82] (reversing summary judgment in favor of an employer when the employee suffered injuries after being ordered by employer into area of toxic fumes just evacuated to protect other workers); *Trahan v. Trans–La. Gas Co., Inc*., 618 So.2d 30 (La.App. 3 Cir.1993)[83](reversing an exception of no cause of action where employer ordered employee to proceed with work involving exposure to chemicals when employer knew employee became ill on two prior occasions after such exposure); *Major v. Fireman's Fund Ins. Co.*, 506 So.2d 583 (La.App. 4 Cir.1987)[84](reversing summary judgment in favor of an employer who ordered an employee to work on hot rollers after being informed employee could not work around chemicals pursuant to doctor's order, the mask was not working, and saw employee's nose bleeding)."[85]

---

[80] *Williams,* 2016 WL 807762, at *9.
[81] R. Doc. 50, pp. 6-7.
[82] R. Doc. 38-1, pp. 15-16.
[83] R. Doc. 38-1, p. 15; R. Doc. 50, pp. 6-7.
[84] R. Doc. 50, p. 7.
[85] 828 F.Supp. at 851.  *See also, Clark,* 618 So.2d at 31-32, cited at R. Doc. 50, p. 6 (affirming trial court judgment finding an intentional tort when plaintiff employee protested against working on wet roof to supervisor and co-worker slipped on wet roof but workers were ordered to return to work and the plaintiff fell off the roof); and *Abney,* 755 So.2d at 289, cited at R. Doc. 50, pp. 6-7 (affirming trial court judgment that employer committed an intentional act when the injured plaintiffs informed their supervisors that they suffered nose bleeds and other injuries every time they worked in fractionation tower, were refused respirators, and were told to return to the tower or quit). *Bryant v. Exxon Mobil Corporation,* No. 10-532, 2011 WL 3163147 (M.D. La. May 19, 2011), report and recommendation adopted, No. 10-532, 2011 WL 3207817 (M.D. La. July 26, 2011) (*see* R. Doc. 38-1, pp. 17, 21) is not persuasive because it does not address the central issue in this case, *i.e.*, whether the actions of the Supervisory Defendants rose to the level of intentional acts *under the LWCA*.  While *Valentine Sugars Inc*., 444 So.2d 618 (relied on by *Van Alton v. Fisk*

Many of Plaintiff's allegations allege violations of safety standards or failure to provide safety equipment;[86] however, in *Reeves v. Structural Preservation Systems,*[87] the Louisiana Supreme Court noted that the state appellate courts have narrowly construed the intentional act exception and have "almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment."[88] When addressing the plaintiff's contention that the supervisor's fear that someone would get hurt if a 350 to 400 pound sandblasting pot was moved manually met the "substantial certainty" test, the Louisiana Supreme Court stated: "[b]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."[89]

---

*Electric, Inc.*, 451 So.2d 1237 (La.App. 4 Cir. 6/6/84)) held that an employee's pleading of the intent element of his intentional tort cause of action against his employer generally and without particularity was sufficient to, at least, withstand *an exception of no cause of action,* this Court has previously rejected reliance on *Valentine Sugars* as dispositive on a motion to remand. *See Mitchell v. Exxon Corp.,* 860 F.Supp. 332, 335 (M.D. La. 1994) (finding improper joinder of an injured worker's co-employees and noting, post-*Valentine Sugars*, "In subsequent Louisiana cases, a procedure has evolved in 'intentional tort' cases where the employer's (or co-worker's) exception of no cause of action is denied based on conclusory 'well pleaded facts, followed by grant of the defendant's motion for summary judgment where plaintiff cannot produce a factual basis to support the generalized intent allegations of the petition." When urged to follow the same procedure, this Court declined, holding: "We do not here consider a state exception of no cause of action. Federal procedure has no pleading which is precisely like that Louisiana pleading. We were consider a motion to remand—a pleading which has no Louisiana counterpart. The issue is not, as plaintiffs argue, whether the 'well pleaded facts' of the petition state a cause of action under Louisiana law but whether Exxon has demonstrated that there is no actual possibility that plaintiffs can obtain judgment against the nondiverse defendants.") (citations omitted).

[86] R. Doc. 1-1, pp. 10-11, ¶¶ 55-56.

[87] 731 So.2d at 211.

[88] *Reeves*, 731 So.2d at 211-12 (holding that it was not an intentional act for an employer to direct an employee to manually move a 350 to 400-pound sandblasting pot although this procedure was prohibited by OSHA regulations and notwithstanding that the employee's supervisor had specifically requested a forklift from the employer).

[89] *Reeves,* 731 So.2d at 212. *See Dycus v. Martin Marietta Corp.*, 568 So.2d 592, 594 (La.App. 4 Cir. 9/25/90) ("Louisiana Courts have held that an employer's failure to provide even specifically requested safety equipment is not an intentional tort for purposes of the exception to the worker's compensation exclusivity rule. Even proof that a worker was told by his employer to work in an unsafe place was considered insufficient to prove an intentional tort."). *See also McLin v. H&H Lure Co.,* 102 F. Supp. 2d 341, 345-46 (M.D. La. June 2, 2000) (the Petition's allegation that "…plaintiffs [sic] injuries were substantially certain to follow her working over a period of time with toxic chemicals in an unventilated area without proper protective equipment" was a conclusory allegation, and granting motion to dismiss, holding "…the Court finds an employer's knowledge of a work place risk to an employee does not in and of itself constitute 'intent' under the intentional act exclusion.").

Plaintiff's allegations that the Supervisory Defendants were "substantially certain" his injuries would result because the Supervisory Defendants failed to properly monitor and warn him of MDI and created a dangerous condition,[90] are the type of conclusory allegations that the Court is not required to accept. "[U]nder Louisiana law, the intentional tort exception to the exclusive remedy provision of the workers' compensation statute is to be given a narrow interpretation. As such, the standard for prevailing on a claim of intentional tort under Louisiana law is 'extremely high.'"[91] Plaintiff's allegations against the Supervisory Defendants in the Petition are not enough to meet this standard and Plaintiff's claims against the Supervisory Defendants should be dismissed without prejudice.

### 2. It is not necessary to pierce the pleadings and consider summary-judgment type evidence.

While the parties have submitted affidavits and deposition transcripts in connection with the briefing on the Motion, they have both conceded that a summary inquiry is unnecessary.[92] When a plaintiff's allegations *can survive a Rule 12(b)(6) challenge*, the district court may, in some circumstances, "'pierce the pleadings and conduct a summary inquiry' before slamming the door on a claim of improper joinder."[93] Here, because Plaintiff's allegations against the Supervisory Defendants cannot survive a Fed R. Civ P. 12(b)(6)-type analysis, it is not necessary to consider "summary-judgment type" evidence.

---

[90] R. Doc. 5-1, p. 5 and R. Doc. 13, p. 3.

[91] *Bonner,* 2013 WL 2470466, *2 (citations omitted).

[92] R. Doc. 38-1, p. 24 ("*In rare cases, a court may conduct a limited summary inquiry*. As set forth above, Kinder Morgan's claim of improper joinder should be rejected based on the face of the Petition. The pleading should only be pierced in discrete instances where a plaintiff misstates or omits discrete facts. *Smallwood*, 385 F.3d at 573. Here, Plaintiff's detailed Petition obviates the need to pierce the pleadings…A summary inquiry, while within the discretion of the district court, is not favored. *See Andrews v. AMERCO*, 920 F. Supp. 2d 696, 704 (E.D. La. 2013).") (emphasis in original), and R. Doc. 51, p. 7 ("…because the Plaintiff's allegations cannot survive a Fed. R. Civ. P. 12(b)(6)-analysis, it is not necessary to consider 'summary-judgment type' evidence," citing *Garcia*).

[93] *Pitman v. Crane Co.*, No. 13-83, 2013 WL 1403326, at *3 (E.D. La. April 5, 2013) (emphasis added).

## III.    RECOMMENDATION

The Supervisory Defendants have been improperly joined as defendants in this case.  The generalized, conclusory allegations in the Petition that the Supervisory Defendants "intentionally" failed to act and "knew to a substantial certainty" Plaintiff's injuries would result are not sufficient to establish the intentional act exception to the LWCA's exclusivity provision.  As the Supervisory Defendants should be dismissed from this suit, complete diversity exists in this action between Plaintiff the properly joined defendants and the Court may exercise subject matter jurisdiction.

Accordingly,

**IT IS RECOMMENDED** that the claims of Plaintiff Cary Delaune against Defendants Michael A. Sassich, Mathew J. Notarangelo, and William M. Weber be **DISMISSED WITHOUT PREJUDICE** and that the Motion to Remand,[94] filed by Plaintiff, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that this matter be referred to the undersigned for a scheduling conference.[95]

Signed in Baton Rouge, Louisiana, March 1, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[94] R. Doc. 38.
[95] Entry of a scheduling order was deferred pending resolution of the Motion.  R. Doc. 40.